## CHARLOTTE FURNACE CO. v. CYRUS STOUFFER.

### ERROR TO THE COURT OF COMMON PLEAS OF FAYETTE COUNTY.

Argued May 15, 1889—Decided June 28, 1889.
[To be reported.]

1. Replevin will lie for an inclined plane connecting a railroad with defendant's ore mines, and located partly on land belonging to defendant, which was built by the plaintiff under an agreement that the defendant should have the use of it for a certain compensation during a determinate period, and which at the expiration of the period the defendant refused to deliver to the plaintiff.

2. An agreement to pay a compensation for the use of a structure erected upon land, being prima facie inconsistent with ownership thereof by the person so agreeing, is evidence against him of a title to the structure in the person who is to receive the compensation, even though, as to the land occupied, the latter were tenant and the former landlord.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 345 January Term 1889, Sup. Ct.; court below, No. 113 June Term 1885, C. P.

On March 31, 1885, the Charlotte Furnace Co. brought replevin against Cyrus Stouffer, to recover a certain inclined plane and its appurtenances, located at Mt. Vernon. The defendant pleaded non cepit and property in himself.

At the trial on February 14, 1888, the plaintiff put in evidence the following written proposition and acceptance :

" I agree to deliver the Charlotte Furnace Co. three thousand (3000) tons of ore at rate of fifteen (15) tons per day at mouth of pit formerly worked by me, and placed conveniently for loading on cars of incline, which is to be built and operated by them. The price of this ore to be two and fifty one hundredths dollars ($2.50) per ton of 2240 lbs. as weighed on the scales of the Greenlick Narrow Gauge Railway Co., and payment to be made from 15th to 20th of each month for previous month's shipments. Twenty cents (20c.) per ton of the above-named ($2.50) to be retained by them and paid to J. R. Stouf-

fer, his receipts to be acknowledged as payments for such amount. It is also understood that in case I mine more ore than the quantity above specified, I have the privilege of selling excess amount to other parties, after giving Charlotte Furnace Co. opportunity of purchasing at the same price offered by such parties, and I further agree to pay 5c. per ton for use of incline and tramway on all ore that may be sold to other parties than Charlotte Furnace Co., for the term of four years from this date, and cash advances for labor are to be made on ore at dump, when shipments have not been made as above specified.                    CYRUS STOUFFER.

Accepted, CHARLOTTE FURNACE COMPANY,

By G. K. MILES.

Mt. Vernon, Pa., March 5, 1881."

The plaintiff then adduced evidence to the effect that the incline and tramway referred to in this proposition, extending between the Greenlick Narrow Gauge Railway and an ore pit mouth belonging to the defendant, was built by the plaintiff company in 1881, at its expense, and was operated by it while shipping the 3000 tons of ore mentioned in the agreement, the delivery of which was completed in April, 1882; that during the remainder of the four years mentioned in the agreement the defendant operated it; that on March 30, 1885, an agent of the plaintiff went to take possession of and remove the inclined plane, when the defendant claimed the ownership of it and refused to let plaintiff take it away. The next day this action was brought.

A witness for plaintiff testified that about four fifths of the plane was located on land belonging to D. H. Pershing, and the remainder on land of the defendant; that Pershing was back and forth about the mines while the plane was being built, never objected to its construction upon his land, and furnished to the plaintiff a part of the lumber required for it; also that the defendant was present frequently and made a suggestion as to a change of location with a view to convenience in operation.

The plaintiff put in evidence an agreement between D. H. Pershing and Everson, Knapp & Co. dated September 8, 1874, "for the purpose of showing the right of the plaintiff company over the property of D. H. Pershing," and presented some tes-

timony in relation to an assignment of this agreement to the plaintiff made by Everson, Macrum & Co. Neither the agreement nor the assignment was printed in the paper books. There was also testimony to the effect that the defendant had obtained a lease from Pershing subsequent to the building of the incline and tramway, under which he operated a stone quarry, with which he connected the incline, though the plaintiff notified him not to use the incline for that purpose. This lease to the plaintiff was not printed in the paper books.

At the conclusion of the plaintiff's testimony, the court, EWING, J., on motion, entered a judgment of compulsory nonsuit. A motion to take off the nonsuit was subsequently refused, " the court being of the opinion that the property, for the recovery of which this action was brought, as shown by the evidence of the plaintiff, is not such property as that for which an action of replevin can be sustained." Exception.

The plaintiff then took this writ, assigning for error the refusal of the court to vacate the judgment of nonsuit.

*Mr. S. L. Mestrezat*, for the plaintiff in error :

The court held this property to be a fixture, that the relation of landlord and tenant existed between the parties, and that the plaintiff, as tenant, had no right to remove the fixture after the expiration of the tenancy.

1. The agreement created no tenancy, but was a hiring by the defendant for a certain time, at a certain sum, of the personal property of the plaintiff : Hill v. Sewald, 53 Pa. 271. Plaintiff could not remove before the time expired without a breach of the contract of hiring : Wheeler v. Train, 3 Pick. 255 ; Collins v. Evans, 15 Pick. 63.

2. At least four fifths of the incline was on land not belonging to defendant. As to this, defendant can on no pretence claim to be the plaintiff's landlord, and there is nothing in the contract making this incline which the plaintiff had built, at its expense, the property of the defendant, or giving him more than a right to hold and use it until March 5, 1885. The parties regarded the property as personalty, and not as a fixture, and their intention becomes the law of the case : 2 Smith's Leading Cases, 8th Am. ed. 244, and cases there cited.

3. The title being thus in the plaintiff, the defendant's failure to deliver up the property, as requested, after the expiration of the time for which it was hired, subjected him to an action of trover or replevin, as plaintiff might elect: Russell v. Richards, 10 Me. 429 (25 Am. Dec. 254); Osgood v. Howard, 6 Greenl. 452; Dame v. Dame, 38 N. H. 429 (75 Am. Dec. 195); Badger v. Phinney, 15 Mass. 359; Weaver v. Lawrence, 1 Dall. 156; Harlan v. Harlan, 15 Pa. 507; Green v. Ashland Iron Co., 62 Pa. 97.

*Mr. R. H. Lindsey* (with him *Mr. Geo. D. Howell*), for the defendant in error:

1. The plaintiff does not contend that the incline and its connections are not, per se, fixtures. The decisions on this point are too uniform and consistent to admit of question: Ege v. Kille, 84 Pa. 333; Voorhis v. Freeman, 2 W. & S. 118; Quimly v. Manhattan Co., 24 N. J. Eq. 260; Hoskins v. Woodward, 45 Pa. 42; Pyle v. Pennock, 2 W. & S. 390; Ewell on Fixtures, 214; Rogers v. Gilinger, 30 Pa. 185. Replevin will not lie for a fixture, unless severed from the freehold: Roberts v. Dauphin Deposit Bank, 19 Pa. 71. There is here no claim of any severance, and the statement that the parties regarded this as personal property is a pure assumption, unsustained by any testimony.

2. Plaintiff's argument does not fully state the grounds on which the court below ruled the case. The court first sustained defendant's position that the incline became by attachment a part of his freehold. Plaintiff then shifted its ground and claimed to be a tenant under the contract, and as such to have the right to remove fixtures. To this it was replied that the failure to remove during the four years term would avoid the right of removal, a position fully sustained by Overton v. Williston, 31 Pa. 155; White v. Arndt, 1 Wh. 91; Darrah v. Baird, 101 Pa. 272. The allegation that part of the incline was on land leased from Pershing is of no importance. It clearly appears that this was leased by defendant, and plaintiff was his sub-tenant. The contract and the conduct of the parties fairly show the intention to be that defendant was to become the owner of the incline at the end of four years.

OPINION, MR. JUSTICE GREEN:

The nonsuit ordered in this case can only be sustained upon the theory that the plaintiff's testimony showed such an interest of the defendant in the inclined plane, to recover which the action was brought, as to deprive the plaintiff of any right of recovery therefor. After a repeated and most thorough reading of the testimony, we fail to discover such evidence. By the terms of the contract between the plaintiff and defendant the plaintiff was to build the plane at its own expense and the testimony shows this was done. It was further agreed that the defendant was to deliver the ore conveniently for loading on cars of the incline, which was to be operated by the plaintiff. It was also agreed that if more ore than 3000 tons was mined, the defendant should have the privilege of selling the excess to other parties, and in that event he was to pay five cents per ton to the plaintiff for the use of the incline and tramway for the term of four years. This contract is the only written evidence as to the relation of the parties to the incline and tramway, and so far as it goes it certainly is altogether inconsistent with any ownership of the defendant therein. If the defendant was to pay the plaintiff for the privilege of using it, the structure cannot be regarded as having been considered by the parties as belonging to the defendant, but precisely the opposite.

In point of fact, Stouffer used the incline to ship ore during the whole of the four years after the 3000 tons were shipped, and it is to be presumed he paid the contract price for the privilege, though there is a singular lack of testimony on this subject. After the four years expired the plaintiff undertook to take possession of the structure, but the defendant refused to allow this to be done, and hence this suit. The defendant now claims title to the structure, and in support of his claim alleges that he became owner by virtue of the right which a landlord succeeds to, when a tenant voluntarily erects fixtures on the leased premises and leaves them there when he leaves the premises. Even that right is subject to an exception in favor of trade fixtures, but in this case we fail entirely to discover the relation of landlord and tenant between these parties. There was evidence that the incline was erected principally on land of D. H. Pershing, and that Pershing had made an article

of agreement in relation to the use of the land with Everson, Knapp & Co., who had assigned the agreement to the plaintiff. We are not permitted to know the contents of this paper because it is not printed and does not appear on the record, and yet we are expected to pronounce upon it. If the case of the plaintiffs in this court depended upon the contents of this paper, we would be obliged to decide against them for want of knowledge of the paper, but as they have a prima facie case without it, and the paper does not purport to confer any right upon the defendant, it is not so material in that regard. The defendant however has shown no title to the land upon which the incline was built, so far as we can discover, and no relation of landlord and tenant as between him and the plaintiff.

The agreement to pay for the use of the incline is inconsistent with any ownership therein on his part, even if he were landlord, and as he had a right to the possession and use of the incline during the four years, no inference of an abandonment of it to him arises from the fact that the plaintiff was out of possession at the time its claim was made. The case was incompletely tried. There was an absence of evidence which ought to be in it. Only the plaintiff's testimony was heard. The agreement made by Pershing, though given in evidence, is not printed. An alleged lease to Stouffer is referred to, but was never given in evidence and of course we know nothing about it. It is very plain to us that it was error to order a nonsuit upon the state of the record as it comes to this court.

Judgment reversed, and new venire awarded.